1  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
2  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
3  Natasha Mehta (SBN 272241)
   nmehta@baronbudd.com
4  BARON & BUDD, P.C.
5  15910 Ventura Boulevard, Suite 1600
   Encino, California 91436
6  Telephone:   (818) 839-2333
7  Facsimile:   (818) 986-9698

8  Lionel Z. Glancy (SBN 134180)
   lglancy@glancylaw.com
9  Marc L. Godino (SBN 182689)
   mgodino@glancylaw.com
10 Casey E. Sadler (SBN 274241)
   csadler@glancylaw.com
11 GLANCY BINKOW & GOLDBERG LLP
12 1925 Century Park East, Suite 2100
   Los Angeles, California  90067
13 Telephone:   (310) 201-9150
14 Facsimile:   (310) 201-9160

15 Co-Lead Interim Counsel for Plaintiffs and
   the putative class

16                 UNITED STATES DISTRICT COURT

17               CENTRAL DISTRICT OF CALIFORNIA

18                      WESTERN DIVISION

19

| 20 | *IN RE: Avon Anti-Aging Skincare Creams and Products Marketing and Sales Practices Litigation* | Case No.: 2:12-cv-09084-GW-JC **CONSOLIDATED CLASS ACTION** |
|---|---|---|
| 21 | | |
| 22 | | **CONSOLIDATED COMPLAINT** **Jury Trial Demanded** |
| 23 | | |
| 24 | | District Judge:  Hon. George H Wu |
| 25 | | Magistrate Judge:  Hon. Jacqueline Chooljian |
| 26 | | |
| 27 | | Case Filed:  Oct. 23, 2012 |
| 28 | | Trial Date:  None Set |

FILED
CLERK, U.S. DISTRICT COURT

JAN 1 0 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Plaintiffs LORENA TRUJILLO and MONIQUE QUINTANA ("Plaintiffs"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## NATURE OF THE ACTION

1.    This action is brought on behalf of Plaintiffs and a class of consumers who purchased Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, ANEW Reversalist Renewal Serum, and ANEW Clinical Thermafirm Face Lifting Cream (the "Avon Anti-Aging Products"). Plaintiffs' claims concern the deceptive and misleading practices conducted by Defendant Avon Products, Inc. ("Defendant" or "Avon") in connection with marketing of the Avon Anti-Aging Products, in violation of California and New York state law, and the common law.

2.    Plaintiffs bring this action on behalf of themselves and other similarly situated consumers nationwide and in the State of California to prevent Avon from continuing to mislead consumers, and to obtain redress for those who have purchased Defendant's Avon Anti-Aging Products.

3.    As more fully alleged herein, Defendant's schemes or artifices to deceive Plaintiffs and other members of the proposed Classes has consisted of systemic and continuing practices of disseminating false and misleading information via television commercials, Internet websites and postings, blast emails, radio media, blogs, video news releases, advertisements, and the packaging of the Avon Anti-Aging Products, all of which is intended to induce unsuspecting consumers, including Plaintiffs and other members of the proposed Classes, to purchase millions of dollars of the Avon Anti-Aging Products, which are manufactured, distributed marketed, advertised or sold by Defendant.

4.    Avon used aggressive marketing to mislead consumers into believing that the Avon Anti-Aging Products were bottled at the fountain of youth. Indeed, Avon preys upon consumers who fear the effects of aging and believe there are products that can make their skin and features youthful again, and halt or turn back the inevitable hands of time.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendant.  Further, greater than two-thirds of members of the Class reside in states other than the states in which Defendant is a citizen.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs ordinarily would expect to try them in one judicial proceeding.

6.     Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue.

7.     Additionally, venue lies within this judicial district under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

## PARTIES

8.     Plaintiff Lorena Trujillo is an individual and a citizen of California.

9.     Plaintiff Monique Quintana is an individual and a citizen of California.

10.     Defendant Avon Products, Inc., a citizen of New York, is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 777 Third Avenue, New York, New York  10017.

11.     Defendant Avon Products, Inc. is authorized to do and, in fact, is doing business in the State of California, because, among other things, its products are offered for sale via the Internet, accessible to consumers in California.

12.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary

CONSOLIDATED CLASS ACTION COMPLAINT

business and affairs of Defendant.

## FACTUAL BACKGROUND

13.    Avon proclaims itself to be the world's leading direct seller of cosmetic products.  Since 1886, Avon and its predecessor have been engaged, under the internationally renowned name and mark AVON, in the sale of cosmetics, fragrances, toiletries, and related beauty and wellness products and, for many years, have, among other things, been engaged in distributorship and direct sales services, door-to-door retail merchandising, telephone shop at home services, mail order catalog sales, and interactive internet sales, all in the fields of beauty care, salon and spa services, personal care products, toiletries, cosmetics, housewares, clothing, jewelry, gift items, collectibles, toys, pre-recorded videos, audio tapes, and compact discs throughout the United States and the rest of the world.

14.    Currently, there are approximately 76 million baby boomers in the United States.  By 2030, the United States government projects that one in five people will be sixty-five or older.  One of the defining features of the baby boomer population is its desire to remain youthful.  As a result, anti-aging and health related products and services are flooding the market.  A consumer base striving to keep signs of aging at bay will push the U.S. market for anti-aging from approximately $80 billion dollars today to more than $114 billion by 2015.

15.    Avon has aggressively sought to capitalize on this growing market.  To stay ahead of the competition Avon has engaged in a widespread and pervasive scheme to deceive consumers about the efficacy of the Avon Anti-Aging Products.  Avon knows that consumers are willing to pay a premium for anti-aging products, and as a result, it advertises the Avon Anti-Aging Products with the intention that consumers rely on the affirmative misrepresentations on their labeling.  Avon also knows that reasonable consumers, including Plaintiffs, do not have the specialized knowledge necessary to identify the deceptive nature of Defendant's claims.

16.    Defendant's Avon Anti-Aging Products are exclusively available through

limited authorized channels, namely, Avon's Independent Sales Representatives, who use catalogs, brochures, and other promotional material, and Avon's website, www.avon.com. to offer for sale and sell Avon Anti-Aging Products. The Avon Anti-Aging Products are not sold in beauty parlors, salons, drug stores, department stores or other retail outlets, or via the web, other than exclusively through Avon's website.

17. The Avon Anti-Aging Products line is anchored by its ANEW-branded products. Defendant's ANEW products are sub-branded into several categories, including "ANEW Reversalist," "ANEW Ultimate," and "ANEW Clinical," among others. Avon has earned handsome profits by misleading the public with claims for these products such as:

"How does Reversalist work? **Activinol Technology** helps reactivate skin's repair process to recreate fresh skin and help dramatically reduce the look of wrinkles and discolorations."

"Ultimate's ***Pro-Sirtuin TX Technology*** is formulated to Stimulate Sirtuin Youth Proteins and help increase the production of healthier youth cells [and] Activate Remodeling Proteins to help restore the youthful architecture of skin."

"ANEW Clinical features breakthrough targeted treatments that offer at-home answers to the costly, time consuming and often painful procedures found in a dermatologist's office. These cutting edge products deliver quick, age transforming results at home and return skin to a more youthful state without a doctor's appointment."

18. Such incredible statements are made across the Avon Anti-Aging Products line. Defendant asserts that its claims of superiority over lesser-priced wrinkle creams are based on, for example, breakthroughs in science and purported breakthrough scientific discoveries of unique formulas that penetrate deeply into skin and turn back the hands of time, by, among other things, "boosting collagen production," "recreat[ing] fresh skin," and "fortify[ing] damaged tissue."

19. Avon claims that it has proven these "unprecedented discover[ies]" with such things as "in-vitro tests on 3D reconstructed skin," "exhaustive research, testing & review" and "clinical" studies. Avon knew or should have known that its representations about skin creams and serums being able to boost collagen production, as one example,

1  were false, and Avon purposely misrepresented and failed to disclose such falsities to

2  consumers.

3      20.    Avon's marketing, such as the advertisements pictured below, highlight the

4  purported impact that the Avon Anti-Aging Products have on the genes or composition of

5  consumers' skin.

6      21.    Avon has spent millions of dollars on a pervasive, deceptive and misleading

7  advertising campaign regarding the efficacy of the Avon Anti-Aging Products.   In fact,

8  Avon has even touted the inclusion of special molecule, the "A-F33 Molecule," in the

9  Avon Anti-Aging Products to give the impression that they will medically benefit

10  consumers who use them.

11     22.    Exemplars of Avon advertisements touting the "A-F33 Molecule" are as

12  follows:





**Avon's Representations Concerning**
**ANEW CLINICAL Advanced Wrinkle Corrector**

23.     The webpage for ANEW CLINICAL Advanced Wrinkle Corrector expressly

promises as follows:

> The at-home answer to wrinkle-filling injections. Start
> rebuilding collagen in just 48 hours°. Results not comparable to
> professional procedures.

> Skin's 4 structural components weaken and decrease, causing
> new lines to form and wrinkles to deepen.

> **CLINICAL Advanced Wrinkle Corrector**
> is designed to help reduce the look of wrinkles.

> **4D WRINKLE-REVERSE TECHNOLOGY IS DESIGNED**
> **TO:**

> **Rebuild collagen** to help plump out lines and wrinkles.

> **Stimulate elastin** to help improve elasticity and resilience.

> **Regenerate hydroproteins** to help visibly minimize creasing.

> **Formulated to boost shock-absorbing proteins** to help
> strengthen skin's support layers.

6

Improve fine & deep wrinkles up to 50%*. Immediately plumps out wrinkles and fine lines.** Within 48 hours begins boosting collagen production.° 1.7 fl. oz.

24. The packaging for ANEW CLINICAL Advanced Wrinkle Corrector appears as follows:



25. Avon's other marketing materials depict ANEW CLINICAL Advanced Wrinkle Corrector as follows:



7

26.    Avon's messages concerning ANEW CLINICAL Advanced Wrinkle Corrector are false and misleading, and reasonably likely to, and do in fact, deceive the consuming public.

**Avon's Representations Concerning**
**ANEW REVERSALIST Night Renewal Cream**

27.    The webpage for ANEW REVERSALIST Night Renewal Cream expressly promises as follows:

> "Before I used this night cream, people called me 'ma'am.' Now they call me 'miss.'" - Jo-Ann, Development

> Reactivate skin's repair process to help reverse the look of wrinkles with Activinol Technology, working better together. 1.7 fl. oz.

> Over 80% of people saw their wrinkles dramatically reversed.* In **3 days**, 73% of people said their skin felt and looked reborn.** In **4 weeks**, dramatically reduces the look of wrinkles and discolorations.

> *Among those who expressed an opinion in a consumer-perception study. Results observed over time. **Based on a consumer-perception study.

> Remember the younger you? Welcome back...Introducing ANEW REVERSALIST. Reactivate skin's repair process to help reverse the look of wrinkles.

> **A key to skin repair - Activin**: wrinkles are a result of micro-injuries to the skin, so AVON studied how skin heals. As part of the repair process, the body produces Activin.

> **5 groundbreaking years in development**: exhaustive research, testing & review has resulted in an unprecedented discovery by AVON scientists: how to activate this key repair molecule.

> **Reactivate, recreate & reverse**: Designed to boost Activin, ANEW's **Activinol** Technology helps reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles.

8

CONSOLIDATED CLASS ACTION COMPLAINT

28.    The packaging for ANEW REVERSALIST Night Renewal Cream appears as follows:

Normal Size:                                    Trial Size:

                            

29.    Avon's messages concerning ANEW REVERSALIST Night Renewal Cream are false and misleading, and reasonably likely to, and do in fact, deceive the consuming public.

**Avon's Representations Concerning
ANEW REVERSALIST Renewal Serum**

30.    The webpage for ANEW REVERSALIST Renewal Serum expressly promises as follows:

> Up to a **2-WEEK SUPPLY**! Reactivate skin's repair process to help reverse the look of wrinkles with Activinol Technology, working better together. .5 fl. oz.
>
> Over 80% of people saw their wrinkles dramatically reversed.* In **3 days**, 73% of people said their skin felt and looked reborn.** In **4 weeks**, dramatically reduces the look of wrinkles and discolorations.
>
> *Among those who expressed an opinion in a consumer-perception study. Results observed over time. **Based on a consumer-perception study.

9

Remember the younger you? Welcome back...Introducing ANEW REVERSALIST. Reactivate skin's repair process to help reverse the look of wrinkles.

**A key to skin repair - Activin**: wrinkles are a result of micro-injuries to the skin, so AVON studied how skin heals. As part of the repair process, the body produces Activin.

**5 groundbreaking years in development**: exhaustive research, testing & review has resulted in an unprecedented discovery by AVON scientists: how to activate this key repair molecule.

**Reactivate, recreate & reverse**: Designed to boost Activin, ANEW's **Activinol** Technology helps reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles.

31.    The packaging for ANEW REVERSALIST Renewal Serum appears as follows:



32.    Avon's messages concerning ANEW REVERSALIST Renewal Serum are false and misleading, and reasonably likely to, and do in fact, deceive the consuming public.

33.     Additionally, Avon's other marketing materials depict ANEW REVERSALIST Night Renewal Cream and ANEW REVERSALIST Renewal Serum as follows:



### Avon's Representations Concerning
### ANEW CLINICAL Thermafirm Face Lifting Cream

34.     The webpage for ANEW CLINICAL Thermafirm Face Lifting Cream expressly promises as follows:

> Our effective lifting treatment is formulated to fortify damaged tissue with new collagen. In just 3 days, see tighter, firmer, more lifted skin.* Simply apply daily to a clean, dry face AM and/or PM under your moisturizer. 1 fl. oz.
> As seen on TV.
>
> How Triple Sonic Technology works:

11

• Ultrasonic stressed yeast and other natural extracts combined are designed to help tighten the connections between skin's layers.

• Also formulated with hydrolyzed plant protein and other natural tightening agents to help form a 3-D matrix on your skin.

Together, these potent ingredients fuse to help provide a visible lifting, tightening and firming effect.

*Based on a consumer-perception study.

RESULTS SHOW:
**After 3 Days****
• Skin looks and feels firmer, tighter and more lifted.

**After 4 Weeks****
• 87% of women felt a more youthful facial definition and shape was restored.
• 77% of women felt their jawline and neck were sculpted.

**With Continued Use*****
• 76% of women showed improvement in sagging.
• Skin tightness improved a remarkable 51%.
• 91% of women showed fewer fine lines.

**Based on women who expressed an opinion in a consumer-perception study. ***Based on a dermatologist-supervised clinical study.

CONSOLIDATED CLASS ACTION COMPLAINT

35.     The packaging for ANEW CLINICAL Thermafirm Face Lifting Cream appears as follows:



36.     Avon's messages concerning ANEW CLINICAL Thermafirm Face Lifting Cream are false and misleading, and reasonably likely to, and do in fact, deceive the consuming public.

### Avon Misleads and Induces Consumers Using Sham Scientific and Research Claims

37.     Upon information and belief, there is no genuine scientific research and there are no scientifically reliable studies in existence that support Avon's extraordinary claims concerning the Avon Anti-Aging Products.  In fact, on October 5, 2012, the Food & Drug Administration ("FDA") issued a warning letter (reference number 262337) to Avon that said, in part:

> [Y]our products Anew Clinical Advanced Wrinkle Corrector, Anew Reversalist Night Renewal Cream, Anew Reversalist Renewal Serum, Anew Clinical Thermafirm Face Lifting Cream, and Solutions Liquid Bra Toning Gel appear to be intended for uses that cause these products to be drugs under section 201(g)(1)(C) of the Federal Food, Drug, and Cosmetic

13

Act (the Act) [21 U.S.C. § 321(g)(1)(C)]. The claims on your
web site indicate that these products are intended to affect the
structure or any function of the human body, rendering them
drugs under the Act. The marketing of these products with
claims evidencing these intended uses violates the Act.

. . .

Your products are not generally recognized among qualified
experts as safe and effective for the above referenced uses and,
therefore, the products are new drugs as defined in section
201(p) of the Act [21 U.S.C. § 321(p)]. Under section 505(a) of
the Act [21 U.S.C. § 355(a)],  a new drug may not be legally
marketed in the U.S. without prior approval from FDA in the
form of an approved New Drug Application (NDA).

38.    Upon information and belief, all Avon Anti-Aging Products are formulated
in substantially the same ways and Defendant utilize the same marketing schemes and
promises for the entire Avon Anti-Aging Products line. Thus, Plaintiffs' claims of
deceptive and misleading advertising/marketing apply to Defendant's entire Avon Anti-
Aging Products line.

39.    Indeed, all of Avon's claims as to the superior benefits of its Avon Anti-
Aging Products are false, deceptive, and misleading, and such claims have induced and
continue to induce consumers to spend substantial sums of money for the Avon Anti-
Aging Products when they do not and cannot provide or produce the touted superior
benefits.

40.    Avon's deceptive and misleading conduct has caused consumers to pay a
premium price for Avon's products when there are readily available moisturizers and
creams at substantially lower prices due to Defendant's claims that Avon Anti-Aging
Products provide a unique benefit and results over those lower priced creams and serums.
Thus, Avon has engorged itself with profits based upon its false and deceptive practices to
the detriment of consumers.

41.    Avon spends millions of dollars misleading customers about the efficacy of
its products by stating that the Avon Anti-Aging Products are superior because of
breakthrough scientific findings and extensive research and clinical studies.  However, as

14

the FDA pointed out in its October 5, 2012 letter, no reliable experts have found that the Avon Anti-Aging Products are effective for the uses touted by the company. Avon's claims are a sham. In fact, as the FDA has recognized, if the Avon Anti-Aging Products could actually do what they claim, Avon would be required to submit a New Drug Application.

42.    Avon promises specific superior results over lesser priced products that offer similar ingredients and efficacy by cloaking the Avon Anti-Aging Products with the indicia of scientific reliability and making claims of "exhaustive research, testing & review," which has led to "unprecedented discover[ies] by AVON scientists." Such deceptive conduct and practices mean that Avon's advertising and marketing is not just puffery, but is instead deceptive and misleading and therefore, is actionable.

43.    A significant feature of the Avon Anti-Aging Products marketing is the promotion of "in-vitro" testing, which gives rise to thoughts of teams of scientists in a laboratory looking for breakthroughs in science. All "in-vitro" testing simply means, however, is that the testing was done in a test tube; not testing the efficacy of the products on people. Avon knows that in-vitro testing does not mean real life use will produce the promised results and benefits.

44.    Yet, Avon promises the Avon Anti-Aging Products penetrate deeply into the skin. One of the sham ways to achieve such a claim is by the in-vitro testing of peptide ingredients. With in-vitro testing, however, peptide molecules, usually weighing over 500 Daltons, are usually too large to actually penetrate skin. Thus, it is usually impossible for those ingredients to reach the cells they are supposedly enhancing through product use. And, where such an ingredient might penetrate the skin, it does not have the same effect as the immersion of skin cells in a test tube filled with the peptide. Avon is fully aware of these facts and fails to disclose such facts to consumers when marketing its Avon Anti-Aging Products.

45.    Avon claims to rely on "dermatologist-supervised clinical stud[ies]," but fails to publish any data that would indicate such "studies" are performed in any way that is

1  recognized as reliable or competent in the scientific community. Consumers certainly
2  have no way to objectively discern if Avon's purported testing and studies are actually
3  reliable. Upon information and belief, in reality, the tests are done on too few subjects to
4  be reliable, or the tests are done on selective and hand-picked subjects so that Avon can
5  achieve the results they want to market through manipulation.

6      46.    Avon takes advantage of every marketing avenue the modern age has opened
7  to them, as well as relying on tried and true traditional methods, in order to ensure that
8  their false and deceptive marketing message permeates the general consumer
9  consciousness. Avon uses television advertising, internet marketing, and social media, as
10 well as celebrity endorsements, "Avon's Independent Sales Representatives," and glossy
11 print brochures. But, no matter which marketing avenue reaches a consumer, Avon drives
12 home the same false and deceptive claims of superior and unique results through all of the
13 advertising mediums.

14     47.    Not only is the uniform message deceptive, but in many cases the advertising
15 mediums allows Avon to achieve another layer of deception. The use of computer
16 software such as Photoshop and high end digital editing equipment allows Defendant to
17 present images of flawless skin, when the reality is likely far different. The use of
18 Photoshop to alter the perception of consumers has been criticized. In fact, the National
19 Advertising Division of the Council of Better Business Bureaus ("NAD") recently called
20 for a ban on the Photoshopping of cosmetic ads to achieve unrealistic results. NAD is
21 reported to have close ties to the Federal Trade Commission, and is an industry watchdog.
22 NAD recently got Procter & Gamble to agree to bar deceptive Photoshopping in
23 advertisements for its "CoverGirl" Mascara according to Jim Edwards of the trade paper
24 *Business Insider*.

25                    **Avon's Deceptive Practices Result in Unfair Profits**

26     48.    As a result of the foregoing, Defendant's claims regarding Avon Anti-Aging
27 Products are deceptive and misleading. Had Plaintiffs and other members of the proposed
28 Classes been aware of the truth about Defendant's Avon Anti-Aging Products, they would

not have purchased the Avon Anti-Aging Products, or would not have paid a premium price for the Avon Anti-Aging Products.

49.  Indeed, Defendant was in a superior position to know and did know that its claims and advertisement were deceptive and false and they failed to inform consumers that its Avon Anti-Aging Products cannot perform as advertised and promised.

50.  Instead, Defendant allows its deceptive and misleading marketing to permeate the consumer advertising consciousness and perpetuate Defendant's false claims and promises.

51.  Because of such deceptive practices and conduct, Defendant is able to charge and get a substantial premium for its products over readily available and much lower priced cosmetic creams and serums that likely share substantially similar ingredients and provide similar results.  Thus, Avon reaps profits on products where consumers are induced to pay an unwarranted, substantial premium.

## PLAINTIFFS' CLAIMS AGAINST AVON

### Lorena Trujillo

52.  Plaintiff Trujillo is a resident of Torrance, California, in Los Angeles County, California.

53.  Plaintiff Trujillo purchased Avon's ANEW Reversalist Night Renewal Cream at least six times in the two years.

54.  In deciding to purchase Avon's ANEW Reversalist Night Renewal Cream, Plaintiff Trujillo saw and relied on the statements on Avon's website, believing Avon's claims that "wrinkles are a result of micro-injuries to the skin," that Avon's "exhaustive research, testing & review has resulted in an unprecedented discovery by AVON scientists: how to activate this key repair molecule," and that if she used Avon's ANEW Reversalist Night Renewal Cream, it would "boost Activin, . . . reactivate [her] skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles."  These representations were material to Plaintiff Trujillo.

55.  Plaintiff Trujillo was denied the benefit of the bargain when she decided to

17

purchase Avon's ANEW Reversalist Night Renewal Cream over competitor products, because she paid for a product that would "reactivate [her] skin's repair process to recreate fresh skin," but she received a product that did not, and could not, provide the benefits it promised to provide.  Accordingly, Plaintiff Trujillo suffered injury in fact and lost money as a result of Avon's false and misleading representations.

56.    Had Avon disclosed to Plaintiff Trujillo and members of the Class that the truth about the Products, they would have seen and been aware of the disclosure.  But for Avon's misrepresentations, Plaintiff Trujillo and members of the Class would not have purchased and consumed the Avon Anti-Aging Products.  Instead, had they known the truth, Plaintiff Trujillo and members of the Class would not have purchased the Avon Anti-Aging Products at all.

### Monique Quintana

57.    Plaintiff Quintana is a resident of San Ysidro, California, in San Diego County, California.

58.    Plaintiff Quintana continuously purchased Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum on a regular basis for at least the last two years, and used them daily during that period.

59.    Plaintiff Quintana's purchases of Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum were made in reliance on Avon's representations and omissions regarding the products' anti-aging effects.  These representations and omissions were material to Plaintiff Quintana's decision to purchase the products.

60.    Had Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum been accurately and appropriately labeled and marketed, Plaintiff Quintana would not have bought them.

61.    As a result of Avon's misrepresentations and failure to disclose the true nature of its ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal

1   Serum products, Avon improperly deprived Plaintiff Quintana of significant funds and

2   denied her the benefit of the bargain.

3                              **CLASS ACTION ALLEGATIONS**

4       62.    Plaintiffs bring this action, on behalf of themselves and all others similarly

5   situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

6   Plaintiffs are informed and believe and on that basis, allege that Defendant has sold

7   thousands of units of the Avon Anti-Aging Products, if not more, in California and

8   throughout the United States.  Plaintiffs are informed and believe and on that basis, allege

9   that the representations on the packaging for the Avon Anti-Aging Products has been

10  uniform throughout the class period.

11      63.    The groups of similarly situated individuals Plaintiffs seek to represent are

12  defined as follows:

13

14          All residents of the United States of America who purchased
            Avon's Anew Clinical Advanced Wrinkle Corrector, Anew
15          Reversalist Night Renewal Cream, Anew Reversalist Renewal
            Serum, and Anew Clinical Thermafirm Face Lifting Cream (the
16          "Avon Anti-Aging Products") during the period of October 23,
17          2008, continuing through the date of final disposition of this
            action (the "Class").
18

19      64.    Additionally, Plaintiffs seek to represent a sub-class defined as follows:

20          All residents of California who purchased Avon's ANEW
21          Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night
            Renewal Cream, ANEW Reversalist Renewal Serum, and ANEW
22          Clinical Thermafirm Face Lifting Cream (the "Avon Anti-
            Aging Products") during the period of October 23, 2008,
23          continuing through the date of final disposition of this action
24          (the "California Statutory Subclass").

25

26      65.    Plaintiffs reserve the right to amend the Class definitions if discovery and

27  further investigation reveal that the Class should be expanded or otherwise modified.

28      66.    Plaintiffs reserve the right to establish sub-classes as appropriate.

67.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class Members" shall mean and refer to the members of the Class.

68.     Community of Interest:  There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

69.     Numerosity:  While the exact number of members of the Class is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant.  At this time, Plaintiffs are informed and believe that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

70.     Ascertainablity:  Names and addresses of members of the Class are available from Defendant's records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

71.     Typicality:  Plaintiffs' claims are typical of the claims of the other members of the Class which they seek to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member of the Class have been subjected to the same deceptive and improper practices and have been damaged in the same manner thereby.

72.     Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are adequate representatives of the Class, because they have no interests which are adverse to the interests of the members of the Class.  Plaintiffs are committed to the

vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

73.   Superiority: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)   The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their "negative value" claims other than through the procedure of a class action.

(b)   If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)   Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

74.   Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

75.   The common questions of fact include, but are not limited to, the following:

(d)   Whether Defendant's practice of misleading consumers who purchase the Avon Anti-Aging Products violate one or more provisions of the CLRA;

(e)   Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

(f)   Whether Defendant engaged in unfair and deceptive consumer trade practices, or other unlawful acts;

(g)   Whether Plaintiffs and members of the Class justifiably relied on the representations Defendant made in connection with its Avon Anti-

21

Aging Products;

(h)   Whether Defendant's conduct was willful or reckless;

(i)   Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit; and

(j)   Whether Defendant engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200 *et seq.* and 17500 *et seq.*

76.   In the alternative, this action is certifiable under the provisions of Federal Rule(s) of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(k)   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant.

(l)   The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(m)   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

77.   Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
*Brought on Behalf of the California Statutory Subclass*
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civil Code §§ 1750 *et seq.*)**

78.     Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

79.     Plaintiffs brings this cause of action on behalf of themselves and the other members of the California Statutory Subclass.

80.     This cause of action is brought under the California Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA"). Plaintiffs and the members of the California Statutory Subclass are consumers as defined by California Civil Code section 1761(d). The Avon Anti-Aging Products are goods within the meaning of California Civil Code section 1761(a).

81.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiffs and the members of the California Statutory Subclass, which were intended to result in, and did result in, the sale of the Avon Anti-Aging Products:

> (5)     Representing that [the Avon Anti-Aging Products have]… characteristics…[and] uses…which they do not have….
>
> (7)     Representing that [the Avon Anti-Aging Products] are of a particular standard…if they are of another.
>
> (9)     Advertising goods…with intent not to sell them as advertised.

82.     Defendant violated the CLRA by misrepresenting and advertising the Avon Anti-Aging Products, as discussed above. However, Defendant knew, or should have known, that these representations were false and misleading.

83.     In order to conceal the fact that its claims of "recreat[ing] fresh skin," "rebuild[ing] collagen," "regenerat[ing] hydroproteins," "boost[ing] shock-absorbing

23

proteins," "boost[ing] collagen production," and "fortify[ing] damaged tissue" are untrue, and to deceptively imply that these false claims actually have scientific support, Defendant labels the Avon Anti-Aging Products with phrases such as "clinical," "focused," and "target[ing] specific concerns," and other representations discussed above.

84.     On October 22, 2012, via certified mail, return receipt requested, under Section 1782 of the CLRA, Plaintiff Trujillo's counsel notified Avon in writing of the particular violations of Section 1770, and demanded that it rectify the problems associated with the behavior detailed above, which acts and practices are in violation of California Civil Code section 1770.

85.     On November 14, 2012, via certified mail, return receipt requested, under Section 1782 of the CLRA, Plaintiff Quintana's counsel notified Avon in writing of the particular violations of Section 1770, and demanded that it rectify the problems associated with the behavior detailed above, which acts and practices are in violation of California Civil Code section 1770.

86.     Avon failed to respond to Plaintiffs' demands, nor did it give notice to all affected consumers under Section 1782.  Therefore, under Section 1780(a) of the CLRA, Plaintiffs and members of the California Statutory Class seek actual and punitive damages.

87.     Plaintiff Trujillo filed a Declaration of Venue in accordance with Civil Code section 1780(d).

88.     Under Section 1782(d) of the CLRA, Plaintiffs seek an order enjoining the act and practices described above, restitution of property, and any other relief that the court deems proper.

89.     Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase the sale of the Avon Anti-Aging Products.

90.     Defendant's misrepresentations and omissions were material to Plaintiffs and members of the California Statutory Subclass.  Plaintiffs and members of the California

24

Statutory Subclass would not have purchased and consumed the Avon Anti-Aging Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiffs and members of the California Statutory Subclass were damaged as a result of Defendant's material misrepresentations and omissions.

**SECOND CAUSE OF ACTION**
*Brought on Behalf of the California Statutory Subclass*
**Violation of the California Unfair Business Practices Act**
**(California Business & Professions Code §§ 17200 *et seq.*)**

91.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

92.   Plaintiffs bring this cause of action on behalf of themselves and the other members of the California Statutory Subclass.

93.   California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described above, Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code section 17200.

94.   Defendant's misrepresentations and omissions of material facts, as set forth herein, constitute an unlawful practice because they violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, and the common law.

95.   Defendant's misrepresentations and omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code sections 17200 *et seq.*, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiffs also assert a violation of public policy by withholding material facts from consumers.  Defendant's violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

96.   There were reasonable alternatives available to Defendant to further

25
CONSOLIDATED CLASS ACTION COMPLAINT

Defendant's legitimate business interests, other than the conduct described herein.

97. California Business and Professions Code section 17200 also prohibits any "fraudulent business act or practice."

98. Defendant's misrepresentations and concealment of material facts, as set forth above, were false, misleading, and/or likely to deceive the public within the meaning of California Business and Professions Code section 17200.

99. Defendant's misrepresentations and concealment were made with knowledge of their effect, and were done to induce Plaintiffs and members of the California Statutory Subclass to purchase the Avon Anti-Aging Products. Plaintiffs and members of the California Statutory Subclass saw and justifiably relied on Defendant's misrepresentations when purchasing the Avon Anti-Aging Products.

100. Defendant's conduct caused and continues to cause injury to Plaintiffs and members of the California Statutory Subclass. Defendant's misrepresentations and omissions were material to Plaintiffs and members of the California Statutory Subclass. Plaintiffs and members of the California Statutory Subclass would not have purchased and used the Avon Anti-Aging Products had it not been for Defendant's misrepresentations and concealment of material facts. Plaintiffs and members of the California Statutory Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.

101. Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and they were material to Plaintiffs. Reliance upon the misrepresentations and omissions discussed herein may therefore be presumed as a matter of law. The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' conduct and the members of the California Statutory Subclass' injuries.

102. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and members of the California Statutory Subclass to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

103.   Additionally, under Business and Professions Code section 17203, Plaintiffs and members of the California Statutory Subclass seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to correct its actions.

## THIRD CAUSE OF ACTION
### *Brought on Behalf of the California Statutory Subclass*
Violation of the California False Advertising Law
**(California Business & Professions Code §§ 17500 *et seq.*)**
**Based on Violations of California's Sherman Food, Drug, and Cosmetic Act**
**(Cal. Health & Safety Code §§ 109875 *et seq.*)**

104.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

105.   Plaintiffs bring this cause of action on behalf of themselves and the other members of the California Statutory Subclass.

106.   Defendant's misrepresentations and omissions of material facts, as set forth herein, constitute an unlawful practice because they violate California Health & Safety Code sections 109875 *et seq.*

107.   Identical federal and California laws regulate cosmetics and drugs.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety Code sections 109875 *et seq.* (the "Sherman Law").

108.   Identical to the FDCA, under the Sherman Law, products are "drugs" if they are "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" or are "intended to affect the structure or any function of the body of man or other animals."  Cal. Health & Safety Code § 109925(b) and (c); *see also* 21 U.S.C. § 321(g).

109.   In connection with the sale and marketing of the Avon Anti-Aging Products, Avon represents, among other things, that the Avon Anti-Aging Products will "recreate

fresh skin," "rebuild collagen," "[s]timulate elastin," "regenerate hydroproteins," "boost shock-absorbing proteins," "boost collagen production," "boost Activin," and "fortify damaged tissue." The Avon Anti-Aging Products are new drugs under the FDCA and the Sherman Law, because the Avon Anti-Aging Products are not generally recognized among qualified experts as safe and effective for the above referenced uses. Cal. Health & Safety Code § 109980(a); *see also* 21 U.S.C. § 321(p).

110. Under the Sherman Law and the FDCA, new drugs may not be legally marketed in the United States without prior approval from the FDA. *See* Cal. Health & Safety Code § 111550; 21 U.S.C. § 355(a). By marketing and selling the Avon Anti-Aging Products as described herein, Avon violates the Sherman Law.

## FOURTH CAUSE OF ACTION
### *Brought on Behalf of the California Statutory Subclass*
### Violation of the California False Advertising Law
### (California Business & Professions Code §§ 17500 *et seq.*)

111. Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

112. Plaintiffs bring this cause of action on behalf of themselves and the members of the California Statutory Subclass.

113. California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

114. Defendant violated California Business and Professions Code section 17500 by, *inter alia*, (a) misleadingly advertising that the Avon Anti-Aging Products would "recreate fresh skin," "rebuild collagen," "regenerate hydroproteins," "boost shock-absorbing proteins," "boost collagen production," and "fortify damaged tissue"; and (b) concealing material information about the true nature of the Avon Anti-Aging Products, in that the Avon Anti-Aging Products did not, and could not, provide the benefits Avon promised to provide.

115. Defendant's deceptive practices were specifically designed to induce

Plaintiffs and members of the California Statutory Subclass to purchase the Avon Anti-Aging Products over those of its competitors. Defendant's deceptive practices were carried out on the labels for the Avon Anti-Aging Products in order to induce Plaintiffs and members of the California Statutory Subclass to purchase the Avon Anti-Aging Products.

116.   Plaintiffs and members of the California Statutory Subclass would not have purchased and consumed the Avon Anti-Aging Products had it not been for Defendant's misrepresentations and concealment of material facts. Plaintiffs and members of the California Statutory Subclass were denied the benefit of the bargain when they decided to purchase the Avon Anti-Aging Products over competitor products, which are less expensive or do not unlawfully claim to rebuild muscle. Had Plaintiffs and members of the California Statutory Subclass been aware of Defendant's false and misleading advertising tactics, they would not have purchased the Avon Anti-Aging Products.

117.   The content of Avon's representations concerning the Avon Anti-Aging Products, as alleged herein, were of a nature likely to deceive reasonable consumers.

118.   Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

119.   Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions may therefore be presumed as a matter of law. The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' conduct and the California Statutory Subclass members' injuries.

120.   Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code section 17500.

121.   As a result of the foregoing, Plaintiffs and members of the California Statutory Class have been injured in fact and lost money or property, and they are entitled

29

to restitution and injunctive relief.

## FIFTH CAUSE OF ACTION
### *Brought on Behalf of the Class*
### Breach of Express Warranty

122.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

123.   Plaintiffs bring this cause of action on behalf of themselves and the members of the Nationwide Subclass.

124.   Plaintiffs, and each member of the Class, formed a contract with Defendant at the time that Plaintiffs and Class members purchased the Avon Anti-Aging Products. The terms of that contract include the promises and affirmations of fact that the Avon Anti-Aging Products would help rebuild muscle and strength, made by Defendant on the packaging for the Avon Anti-Aging Products, as described above.  The packaging for the Avon Anti-Aging Products constitutes an express warranty, became part of the basis of the bargain, and is a part of a standardized contract between Plaintiffs and Class members on the one hand, and Defendant on the other.

125.   All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

126.   Despite express warranties that the Avon Anti-Aging Products alone would help rebuild muscle and strength, the Avon Anti-Aging Products do not provide such a benefit.

127.   Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Avon Anti-Aging Products which rebuild muscle, as described above.

128.   As a result of Defendant's breach of express warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Avon Anti-Aging Products.

## SIXTH CAUSE OF ACTION
### *Brought on Behalf of the Class*
### Negligent Misrepresentation

129.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

130.   Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

131.   In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of said failure to disclose was the negligence and carelessness of Defendant.

132.   In making the representations and omissions, and in doing the acts alleged above, Defendant acted without any reasonable grounds for believing the representations were true, and intended by said representations to induce the reliance of Plaintiffs and members of the Class.

133.   Plaintiffs and members of the Class relied upon these false representations, concealments and nondisclosures by Defendant when purchasing the Avon Anti-Aging Products at issue herein, which reliance was justified.

134.   As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Avon Anti-Aging Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CAUSE OF ACTION
### *Brought on Behalf of the Class*
**Unjust Enrichment**

135.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

136.   Plaintiffs bring this cause of action on behalf of themselves and the other members of the Class

137.   By its wrongful acts and omissions for the Avon Anti-Aging Products, as discussed above, with false and materially misleading claims, Defendant was unjustly enriched at the expense of Plaintiffs and members of the Nationwide Subclass, who did not receive the goods to which they were entitled – as discussed in detail above – for the payments made to Defendant, and thus, Plaintiffs and members of the Class were unjustly deprived.

138.   It would be inequitable and unconscionable for Defendant to retain the profit, benefit and other compensation it obtained from its deceptive, misleading, and unlawful conduct alleged herein.

139.   Plaintiffs and members of the Class  seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## EIGHTH CAUSE OF ACTION
### *Brought on Behalf of the Class*
**Violation of New York Deceptive Trade Practice Act**
**(N.Y.G.B.L. § 349)**

140.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

141.   Plaintiffs bring this cause of action on behalf of themselves and the other members of the Class.

142.   Avon committed deceptive trade practices in connection with the misconduct alleged herein, including through its act of fraud and misrepresentation.  Such acts include Avon's fraudulent misrepresentations about the Avon Anti-Aging Products.

143.   Avon's conduct, as described herein, including its fraudulent misrepresentations concerning the Avon Anti-Aging Products, constitutes a deceptive trade practice in violation of N.Y.G.B.L. § 349.

144.   Avon's deceptive acts described herein were directed at consumers such as Plaintiffs.

145.   Avon's deceptive acts described herein were misleading in a material way.

146.   As a proximate result of Avon's deceptive acts, Plaintiffs and the public, including the Class, have been damaged.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

1.   Certifying the Class, including the California Statutory Subclass, as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class;

2.   Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions discussed herein;

3.   Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

4.   Awarding restitution and disgorgement of Defendant's revenues and/or profits to Plaintiffs and members of the Class;

5.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

CONSOLIDATED CLASS ACTION COMPLAINT

6.    Ordering Defendant to engage in corrective advertising;

7.    Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry to judgment in this action;

8.    Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and For such other and further relief as the Court deems just and proper.

Dated: January 10, 2013        BARON & BUDD, P.C.

By: _____
Mark Pifko

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Natasha Mehta (SBN 272241)
nmehta@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Lionel Z. Glancy (SBN 134180)
lglancy@glancylaw.com
Marc L. Godino (SBN 182689)
mgodino@glancylaw.com
Casey E. Sadler (SBN 274241)
csadler@glancylaw.com
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160

Co-Lead Interim Counsel for Plaintiffs
and the putative class

34

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all issues so triable.

Respectfully submitted,

Dated: January 10, 2013

BARON & BUDD, P.C.

By: _____
Mark Pifko

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Natasha Mehta (SBN 272241)
nmehta@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Lionel Z. Glancy (SBN 134180)
lglancy@glancylaw.com
Marc L. Godino (SBN 182689)
mgodino@glancylaw.com
Casey E. Sadler (SBN 274241)
csadler@glancylaw.com
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California  90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160

Co-Lead Interim Counsel for Plaintiffs
and the putative class

CONSOLIDATED CLASS ACTION COMPLAINT